UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

EDWARD O'HARA                                             CASE NO. 14-11086

DEBTOR                                                    CHAPTER 13

**MEMORANDUM OPINION**

Debtor Edward O'Hara objects to $8,342.58 in sheriff's commission, fees and costs included in the claim filed by Residential Credit Solutions, Inc. ("RCS"). The debtor argues that his loan modification with RCS bars recovery of the fees and costs. The objection has no merit and is overruled.[1]

**Facts**

O'Hara mortgaged his home in Prairieville, Louisiana to secure a loan from Assurance Financial Group, LLC ("Assurance").[2] The debtor's default on the loan led AmTrust Bank, Assurance's successor, to sue to foreclose on the property in June 2008.[3] In March 2011, the debtor and RCS, Assurance's[4] servicer at that time, entered into a loan modification[5] that resulted

---

[1] The debtor's initial January 5, 2015 objection to the claim (P-28) contended some charges included in the claim were unsubstantiated. His amended objection filed April 21, 2015 (P-52) relied on a 2011 loan modification.

[2] RCS attached the note and mortgage for the loan as exhibits to proof of claim 4-1 filed October 24, 2014. The note is at pages 1-3 of the exhibit and the mortgage is at pages 14-27.

[3] "AmTrust Bank v. Edward O'Hara," Case No. 89,600, Division E, 23d Judicial District Court for the Parish of Ascension (Exhibit 4 to RCS's Response to Amended Objection to Claim, P-54).

[4] The original note's odyssey from Assurance (the original payee) to RCS (the claimant), and why AmTrust filed the state court action but Assurance subsequently entered into the loan modification, was not made clear in RCS's original memorandum or the exhibits to its proof of claim. The state court petition recited that AmTrust held the note O'Hara executed in favor of Assurance. The note is attached as an exhibit to P-54 but it bears no endorsement or other evidence of its transfer. However, the exhibits to P-54 include several assignments of the mortgage. Assurance Financial Group, LLC assigned the mortgage to AmTrust-NP SFR Venture, LLC on January 30, 2014 (Exhibit to proof of claim 4-1, pp. 29-30). AmTrust then assigned the mortgage to J.P. Morgan Mortgage

in a new principal balance of $214,500 comprising "all amounts and arrearages … past due as of the Modification Effective Date …."[6] As a result of this agreement, AmTrust stayed the 2008 foreclosure suit without dismissing it.[7]

The debtor defaulted on the modified loan in January 2013 and months later AmTrust amended and supplemented the petition in the 2008 foreclosure suit.[8] RCS paid $8,342.58 in sheriff's commission, fees and costs it incurred in connection with a judicial sale of the property set for July 30, 2013[9] but for reasons not established in the record, AmTrust dismissed the 2008 action on October 3, 2013.

The debtor's continued default on the modified loan triggered a new foreclosure suit in February 2014.[10] O' Hara filed this chapter 13 on August 27, 2014.

---

Acquisition Corp. on June 10, 2014 (Exhibit to proof of claim 4-1, pp. 31-32). RCS is now the servicer for J.P. Morgan Mortgage Acquisition Corp. For purposes of the claim objection, unraveling this twisted paper trail is thankfully not essential.

[5] March 30, 2011 Home Affordable Modification Agreement (Exhibit 1 to P-54).

[6] Home Affordable Modification Agreement paragraph 3(A).

[7] The debtor filed chapter 13 on October 21, 2008 (Case No. 08-11451) between the foreclosure suit's filing and the loan modification. That case was converted to a chapter 7 liquidation (P-57 in the record of case number 08-11451) and the debtor received a discharge on March 12, 2010 (P-85 in case number 08-11451). O'Hara's chapter 7 discharge relieved him only from *personal liability* for the debt to RCS: the creditor retained the right to proceed *in rem* against the property. O'Hara voluntarily agreed to repay the debt in the loan modification and desires to keep the property through his chapter 13 plan. *See Johnson v. Home State Bank*, 501 U.S. 78, 84-85, 111 S.Ct. 2150, L.Ed.2d 66 (1991) ("[A] mortgage lien securing an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a 'claim' within the meaning of §101(5) and is subject to inclusion in an approved Chapter 13 reorganization plan." *Id*. at 78-9.)

[8] July 3, 2013 Amended and Supplemental Petition in Docket No. 89,600, Division E, 23d Judicial District Court (Exhibit 5 to P-54).

[9] Invoice from Ascension Parish and proof of payments (Exhibit 3, P-54). RCS's proof of claim attachment states that the sheriff's fees were incurred on August 27, 2013.

[10] "AmTrust-NP SFR Ventures, LLC v. Edward Joseph O'Hara," Case No. 109,396, Division A, 23d Judicial District Court for Ascension Parish (Exhibit 6 to P-54).

2

## Analysis

*RCS is Entitled to Claim the Sheriff's Commission and Costs under
the Original Note and Mortgage and the Loan Modification*

The original note and mortgage and the loan modification are the law between the parties. La. Civ. Code arts. 1906, 1913, 3287 and 1983. Accordingly, the note, mortgage and loan modification together establish the parties' rights and obligations. The rules of construction and interpretation applicable to written instruments also govern the interpretation of conventional mortgages. *Trussell v. Land*, 19 La. App. 124, 138 So.910, 911 (La. App. 2 Cir. 1932). Thus, the courts must determine the parties' common intent, La. Civ. Code art. 2045, subject to the principle that when the words of a contract are clear and don't lead to absurd consequences, courts may not engage in further interpretation to divine the parties' intent. La. Civ. Code art. 2046.

The debtor may have assumed that the loan modification eliminated all the fees and costs accumulated to the date he signed the modification; however, the note and mortgage themselves indicate otherwise when read together with the loan modification. The note and mortgage allowed the lender to pay fees and costs it incurred to enforce O'Hara's obligation and in turn to recover those expenditures from O'Hara. For example, note paragraph 6(E) provides that "[i]f the Note Holder has required me to pay [the note] immediately in full … the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law …." So too, the mortgage states at paragraph 14 that

> Lender may charge Borrower fees for services performed in connection
> with Borrower's default, for the purpose of protecting Lender's interest
> in the Property and the rights under this Security Instrument, including,
> but not limited to, attorneys' fees, property inspection and valuation fees.

3

> In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on charging of such fee ….

Additionally, the mortgage in paragraph 23 provides that "[f]or the purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys' fees and other fees and charges."

These provisions in the parties' agreements are clear and unambiguous: they allow the lender to recover from O'Hara, the borrower, reasonable fees and costs the lender incurred to protect its rights when the borrower defaulted. Nonetheless, the debtor contends that the loan modification nullified provisions in the original note and mortgage allowing the lender to pass these charges on to a defaulting debtor. Nothing in the documents supports that conclusion.

The loan modification recites at the bottom of page 1 that "this Home Affordable Modification Agreement will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."[11] In addition, the loan modification O'Hara signed recites in section 4(E) "[that] the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed." Section 4(F) further provides:

> [t]hat all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

---

[11] The note and mortgage in combination are referred to as "Loan Documents" throughout the remainder of the loan modification agreement.

4

The loan modification agreement reflects the parties' intent not to totally supersede the original loan documents but merely to amend individual provisions of the note and mortgage, mainly those relating to the new principal balance, deferred principal amount and new maturity date. Construction of the original note and mortgage in conjunction with the loan modification supports the conclusion that the original documents remained in effect and enforceable even after the parties modified the loan.

In sum, the loan modification did not modify O'Hara's obligations to pay fees and costs associated with the mortgage default and the debtor is liable to RCS for the fees and costs it incurred in connection with his default on the loan modification.

*The Sheriff's Commission and Costs Arose Upon Possession*
*of the Writ of Seizure and Sale in July 2013*

Sheriffs in Louisiana are entitled to collect only certain fees and compensation in civil cases. La. R.S. 13:5530(A). The allowed compensation includes commissions upon issuance and possession of a writ of seizure and sale in an executory proceeding; in fact, the sheriff needn't actually seize an asset to be entitled to a commission. *Tucker v. Fowler*, 668 So.2d 718, 720 (La. 1996). Section 5530(A)(13)(a) of title 13 of the Louisiana Revised Statutes specifically authorizes sheriffs, once in possession of a writ of seizure and sale, to collect a commission even though no judicial sale occurs:

> (13)(a) In all cases where the sheriffs have in their possession for execution a writ of fieri facias, a writ of seizure and sale, or any conservatory or other writ under which property is or may be seized: (i) When there has been an adjudication which is not completed as a result of instructions given by the plaintiff in writ or for any other reason. (ii) When the plaintiff in writ receives cash, other consideration, or both pursuant to judgment rendered in suit in which the writ issued without the necessity of judicial sale. (iii) When the suit in which the writ issued is discontinued by the plaintiff in writ. (iv) When at the request of the plaintiff in writ the writ is recalled or dissolved or its further execution discontinued.

5

> (v) When the parties in interest make an amicable settlement or compromise or enter into any other agreement under the terms of which the writ is recalled or dissolved or its further execution discontinued, the sheriffs shall be entitled to receive a fee or commission as in the case of a sale.

That law entitled the sheriff of Ascension Parish to collect fees and commission on July 10, 2013 when the state court, in response to RCS's amended and supplemental petition for executory process, issued a writ directing the sheriff to seize and sell the property.[12] Although RCS later dismissed the lawsuit, the sheriff remained entitled to a commission as if there had been a sale. La. R.S. 13:5530(A)(13)(a)(iii).

The debtor argues that the new mortgage balance reflected in the loan modification encompassed the sheriff's commission and other fees and costs because RCS filed its executory process suit in 2008, before the parties signed the loan modification. This overlooks paragraph 3(A) of the modification agreement, which provided that the modified principal amount included only those amounts and arrears "past due as of the Modification Effective Date …." The sheriff's commission and fees were not due at the time of the loan modification in March 2011. They came due in July 2013, and RCS's claim for reimbursement matured at that time. RCS's dismissal of the amended 2008 petition in October 2013 did not trigger the sheriff's entitlement to the commission but under state law, it allowed the sheriff to receive the fees even though it had not seized and sold the debtor's property.

## Conclusion

Louisiana law entitled the Ascension Parish sheriff to a commission and fees incurred in August 2013 and paid by RCS after the debtor defaulted. The loan modification did not alter O'Hara's liability to RCS under the note and mortgage for the sheriff's commission and fees.

---

[12] There was no evidence of a writ of seizure and sale issued prior to July 10, 2013.

Therefore, the debtor's objection to claim and amended objection to claim are overruled and RCS's proof of claim is allowed in full.

Baton Rouge, Louisiana, January 21, 2016.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

Case 14-11086    Doc 82    Filed 01/21/16    Entered 01/21/16 15:26:40    Desc Main
                    Document      Page 7 of 7